United States Fire Insurance Company v. Icicle Seafoods, Good morning, Your Honors. May it please the Court, I'm Frank Cordell. I represent Icicle Seafoods and a subsidiary in this insurance coverage dispute. I'd like to reserve five minutes for rebuttal, if I may. Your Honors, this case raises two important issues and they're recurring issues under Washington insurance law. They're both related to post-law, what I like to call post-loss conditions, that is procedural requirements imposed on the policyholder that don't go to whether the loss itself is within the scope of the conditions. The Washington Supreme Court has made very clear in multiple contexts that forfeiting one's insurance coverage for alleged breaches of those post-loss conditions is disfavored. The Washington courts favor deciding insurance disputes on the merits. So the case law, therefore, has been very demanding on the insurers to prove, first, that that particular duty or condition exists. Second, that it was breached with the standard being not perfect robotic unquestioning compliance, but rather substantial compliance. Third, that the, in the case that we're talking about here, the question of cooperation, that the request be material, the information request to be material. And I would say most importantly, and this is a requirement that runs through the case law on all of these post-loss conditions, whether it's notice to the insurer, consent in a liability context, consent for the policyholder to settle a case, all these contexts, even if the insurer establishes a breach of such a condition, the insurer does not walk away from its insurance claim and get a windfall, and the cases use that term, windfall, simply because the policyholder breaches a condition unless the insurer proves that that breach caused actual and substantial prejudice to the policyholder. We, we're here to... What, what is your position is that the district court, based on what you're saying, it seems like, is that the district court erred here in just saying you weren't entitled to any damages, and that, but that, but the damages could have been determined based on the information you produced, and if you didn't produce more damages, okay, you don't get those. Yeah, your question, Carl, it, it really illustrates the two, two different things, and what, what, what the underlying motion for summary judgment and Judge Martinez's ruling was about and what it wasn't about. We do not contend that the policyholder never has any obligation to give information to its insurer. Of course it does. So you concede that there is an implied covenant of good faith in, that binds the insured to cooperate with the insurer in the investigation of the claim? No, we are, respectfully, we do not concede that, and let me... You don't think such a duty exists? Let me come back, well, let me, I'll address that by saying that the Washington courts have, we feel like in our brief, we quite clearly demonstrated that the cases the insurers have cited for that notion, that the duty of good faith in, inherent in the insurance relationship imposes a unwritten, free-floating duty to cooperate. The cases don't support that. Well, the most egregious one is the case where, where the insured, you know, refused to, to give a sworn statement, refused to submit to any sort of a deposition, didn't respond to requests from the adjuster. Correct. And, and the court did say, there doesn't have to be language in the insurance policy that requires the insured to respond to those reasonable requests, but there is nonetheless a duty in Washington law to do so if you want to get covered under the policy. Your Honor, respectfully, I don't believe any of the cases say what you just said in the absence of, of insurance policy language requiring an examination under oath or to produce books and records. I understand what you're saying. There's two, two, there's two burdens or there's two things happening in any insurance coverage case. One is that we, the policyholder, we bear the burden of establishing that we're entitled to coverage. We have to come to our insurer and say the, our, our vessel, our, our processing vessel was out of commission for over a year and we, here's, and here are the fisheries we lost out on and here's the, the millions of pounds of fish that we lost out on. That's our burden. And if we don't, if, if in court we don't prove that up, we, we don't get any coverage. My question was on a different question, which is, does the policy impose a duty to cooperate that is completely separate from whether we have come forward and established our insurance claim? Well, it's not completely separate. I mean, the policy says that what you get is coverage for actual loss. And what you're, seem to be saying is, yes, it's our burden to prove that we had actual loss and we'll give you our information that says that we do and you get to trust us because we don't have to let you sort of double check our math or check our records. You just have to take the information we get. Not at all, Your Honor. I understand the question, but what I was trying to draw a distinction of it and it really goes to our position that in this policy, there is no cooperation clause. It's a misnomer in this case. There's a clause that requires us to work cooperatively with the insurer to marshal other insured vessels in a real-time sort of a... For mitigation. Exactly. Mitigate our loss in an operational sense. Let's assume that we agree with you on that. I mean, Judge Tallman led with, is there an implied duty of cooperation here? And do you disagree with that as well, that there's no implied duty to cooperate to try and come to the resolution on damages? Let me also again say that we agree we have to prove up our claim for coverage, but there's a separate question whether the policy or Washington law imposes sort of a trap door or a duty to cooperate. And if we don't respond, if there's back and forth and disagreement about whether the requests are appropriate, at our peril, we disagree and that we forfeit our coverage. Well, and that comes back to my initial question, which is, you seem to be arguing that like, okay, maybe we couldn't support the full $4 million that we were requesting, but we did produce some documents and we did support that evidence, so we want you to go figure out what damages are warranted under the evidence we produced. Is that your position? No, Your Honor. I want to really make sure I'm drawing a distinction between our merits burden if, as we say should happen, there should be a reversal on this notion that we forfeited our coverage claim because we didn't respond pre-litigation in a way that the insurers thought was complete and sufficient. The court ruled that we forfeit our coverage claim. We have no on the merits, so we're not saying that, hey, we Well, you had a dispute with the insured or the insurance company over what was material Correct. to the determination of actual loss here. And the district court found that the requests by the insurer were reasonable requests for documentation and that your client didn't cooperate in producing all the records that the insurer needed in order to assess the actual loss. And you're saying, well, even if that's true, there's no duty to cooperate in that respect here. And I'm not sure I agree with the extension of that argument. Understood, Your Honor. The first part of our brief is laying out our argument that if a carrier wants a procedural duty in that policy that could lead to a forfeiture of coverage because we don't respond in the way that they want us to, to copious information requests, that needs to be in the policy, and Washington law doesn't otherwise impose it. I'm not sure that, given the Washington case law, I'm not sure the case law supports your position. I'm having a hard time drawing a distinction here between the more egregious case where they just won't produce anything, won't cooperate, versus your situation where you produce some but not all, and then they took a long time to find the documents and then to consider them and . . . Understood. And, Your Honor, I don't want to spend all of our time . . . respectfully, I think most of our argument before the district court and here, we were assuming for the sake of argument that there was a general duty to And I have to really emphasize . . . The question becomes, does it cover the actions that were at issue here? I think I understand your statement . . . I mean, meaning, I think you would say there is an implied duty of good faith in the agreement, but it doesn't cover disputes over litigation. That doesn't mean that just because we have a dispute about an implied duty in the contract. I think that's correct. We're saying that under this particular policy, there's not that cooperation clause which puts the policy . . . I understand. Let's assume that there's no express. Do you agree that there's an implied duty of good faith that exists in the contract? Yes. Okay. Yes. But you don't agree that that would lead to the same result that the district court entered here? I do not because of the case, the litigation case law is so fixed, focused on contractual terms that require certain things, examinations under oath, production of documents, etc. So, you want us to just reverse the district court and say, look, you're holding that you're not entitled to anything. The holding that Icicle is not entitled to anything and has forfeited. That's wrong. And that's all we're going to do. We're going to send it back under your view and then the question of how much damages you have. And not only that, we lost on summary judgment on the duty to cooperate, Your Honor. The court found as a matter of law that there was no fact dispute as to whether we substantially complied after producing pre-litigation forensic accountant report, thousands of pages of documentation. The court found no genuine issue of material fact on substantial compliance, no issue of fact on materiality of the document requests, and no issue of fact on the question of whether the insurers, if we had breached a duty to cooperate, whether they were prejudiced. I mean, my take on this, I've got to figure out where it fits in, is there was no dispute that there was coverage under the policy. In fact, I think the insurer suggested that it might, you know, there might be a million dollars in damages here. So, I thought that was on the engine claim. I mean, you've got the whole claim. It's a little, there's the engine claim, the replacement of the whole claim was paid. We're here on the loss of. That was about a million bucks. I think you think the million dollars you're thinking of was a different amount that had to do with, it was a mitigation expense for towing that vessel. Not to repair the engine. So, the whole we're fighting over is the hull loss, which is your inability to use this factory processor during this record season of the salmon run, which you say is about four and a half million. Four and a half million pounds of fish. But actually, I think coincidentally a similar dollar amount. You said hull and it would be our loss of higher claim. Let me be clear what we're asking for here. We're not trying to win here or below on the. You're just saying we didn't forfeit. Correct. We're also not even saying that the carrier cannot argue to the finder of fact that we did breach a duty to cooperate and they were prejudiced by it. We're just saying there was a fact dispute about that and we should be able to argue to the trier of fact. We substantially complied by producing, again, thousands of these disputed documents since were produced and they haven't changed the carrier's position at all, which is still that there's no covered loss of higher loss. So, we simply want. I thought the crux of the discovery dispute was over prior year profits, if you will, or operating revenues from other seasons, earlier seasons. Your Honor, I appreciate the question because unlike Tran and Pilgrim, those are the two big cases where policyholders lost as a matter of law on duty to cooperate. Those are the cases where the Staples Court later said those are extreme cases. Everything you just said is correct. So, we produced thousands of pages of documents pre-litigation supporting our loss of higher claim. There is a, no pun intended, there's a ship's passing in the night disagreement between Icicle and the insurers about what documents are relevant to determining that loss of higher loss. The gist of that dispute. Not whether there was loss in the first place. I mean, I think they would say there was a dispute as to the amount of the loss but not the existence of it. Those disputes briefly are exactly what you said, Your Honor. Icicle pushed back in a reasoned and give and take and back and forth way. They pushed back on requests for data going back to 2013 because Icicle said that's burdensome and you're not understanding that this is a biological, this is a fishery. So, it depends on how big the run is. Right. And the second dispute was the insurers asking for Icicle's financials and tax returns at the company level. And Icicle's position was those are irrelevant. The question, this is the insured vessel. And it doesn't matter if the company was making a profit or not. The question is simply would this vessel in fact have been deployed in the summer of 2017 to catch more fish, to catch fish, but it was unavailable to us and therefore we couldn't harten, they weren't catching, they were processing. Processing fish. So, is your theory that the revenue, I mean, we know what the market price for salmon or whatever the run was, was for that season. And if you got four and a half million pounds, we just multiply that by $20 a pound or whatever the fish were going for and that's your loss? Essentially, yes, Your Honor. We would all, we back out. Without regard to? Correct. And we back out fuel and some variable costs that we didn't have to incur. But that's exactly right. That's our problem here is you sort of, this is where it gets complicated because you've come in and said this is our damages. We're only going to produce stuff that support our damages under our theory. They want to be able to pressure test that. I mean, I can see why prior years would be relevant because maybe, you know, maybe Icicle wasn't as efficient as other, historically efficient as other boats. And so, you know, maybe that should be offset. So it does seem unfair for you to say, hey, we're just going to produce this stuff under our theory. They ask for stuff to produce damages under their theory and you refuse. Well, we didn't refuse. I would say it's not quite the fair characterization because we're not producing anything. Yes, I understand. But we always try to contrast this again with Tran and Pilgrim where the stonewalling and in fact some of the cases use that stone. We weren't stonewalling. We, there was a good faith, you know, reason disagreement about whether these company level financials were relevant and whether prior years were relevant. It's not, we're not saying that there can't ever be a consequence for if we get... Right. Presumably the district court could give an instruction to the jury to say, look, you know, you can't consider this evidence because they weren't given the evidence. But what you're saying is what can happen is just a flat out forfeiture. Exactly right, Your Honor. And again, we understand there can and should be consequences for a, if it's a true breach of the duty to cooperate and it harmed, it prejudiced the insurer, then that's a significant consequence. It just wasn't extreme enough to warrant... To warrant summary judgment against us, Your Honor. Okay. I know we've taken it over. Yes. We'll give you some time for rebuttal. Thank you. Good morning, Your Honors. Matthew Crane for insurers. Is there a dispute that there is some amount owed for lost profits under the, under the policy? There's a dispute whether any amount was incurred. Yes, it's lost profits. Correct. So you, your position is there may not actually be any coverage under the policy. But there's, there is coverage for the claim. So this is not a coverage dispute. Okay. So it's not a coverage dispute, but you're saying the damages might've actually been zero. Zero. That's correct, Your Honor. Okay. And nothing you've heard this morning from Icicles Council or contained in any of the briefs has raised a genuine issue of any material fact regarding Icicles duty to cooperate. So all the three elements... Well, hold on. Is your theory that this vessel basically couldn't be operated at a profit no matter how strong the run was or what the market price per pound was? It could have been, but they didn't demonstrate that. So the issue was when the claim was presented for one as lost profits. That required an investigation by insurers. They got forensic accountants, Alvarez and Marsal, to identify, is the MDD report, does it provide enough information to determine are there any lost profits or not? MDD evaluated that and said there's a whole host of documents that, excuse me, Alvarez and Marsal evaluated that and decided there's a whole host of documents that were not present in the MDD report. Normal things that you expect in a lost profits claim. See, this is what's odd is you didn't win summary judgment because there was no evidence of damages. You won summary judgment because of effectively a discovery dispute that was held to be a violation of an express duty to cooperate, right? Well, I wouldn't characterize it as a discovery dispute. It's a refusal to provide what the insurance company needed to make an evaluation whether there was any lost profits. But that usually goes to damages before a jury or the amount of damages. And if it's true that they haven't presented any evidence of any damage, then you win, but not because of an inability to cooperate but because there's no damages. There's no proof of damages. That could be the end result, but that's not what happened here. What happened here was for 18 months insurers had asked very specific questions. Look, we need documents of demonstrating lost profits. Where are your balance sheets? Where is your income statement? Where is your profit and loss? Where is your tax returns? All of which are relevant. They all seem to be reasonable to me. And relevant. That's what insurers needed to be able to ascertain was there any lost profits and if there was and what amount. So when that was requested, the response back was no. But the district court, what's odd is normally how this happens is you serve a discovery request, they oppose it, they go for a motion to quash, and the district court rules on the motion to quash. That doesn't seem to have happened here. That was all in investigation. It was pre-litigation. That is during the investigation, which for 18 months preceded the litigation. The claim was made in June 2018. So then you came in and just said. It was a declaratory judgment in January, March 2020. 18 months after. And you said they've already failed up to this point. Correct. So that's what cuts this off. That's correct. There was multiple requests by insurers. Provide these financial documents. Provide these records of purchases, sales, expenses. What if we disagree with the district court that there was an express duty? There clearly was an express duty to cooperate, but that it didn't cover this type of cooperation. If we disagree with that and we're under, then I guess we've got this implied duty that exists in all contracts, right? It exists in all contracts. And you would say that we could get to the same result on the implied duty even if we don't agree with the district court? Well, there's an express duty to cooperate as well. I understand that's your position. But if we don't agree with you, would the implied duty that exists in all contracts, in your opinion, that would still provide the same basis to get to the district court?  That's correct, Your Honor. And it's not just an implied duty, but it's an obligation to cooperate, which, as the Washington Supreme Court has said, is essential to an insurance relationship. So when you've got a claim. It seems different. I understand that implied duty as to determine whether there was any coverage under the policy. I'm not sure I agree that it extends to determining the amount of damages. And that's what seems to be different about this case and the Staples case. Well, in both Staples, Tran, and Pilgrim, all had to do with a claim that was made by a claimant that the insurer could not validate for various reasons. What they asked for documents they weren't provided. They couldn't validate the existence of a claim, whether property was stolen, whether there was a burglary. Exactly. But here, there's no dispute. You just said it. There's no dispute that there's actually coverage here. There's just a dispute about what the damages for that coverage would be. That's not what was at issue in Staples. Well, what was at issue in Staples was, was there evidence of prejudice, actual prejudice. And that's what the court found was not established. So it was the same analysis. That is, was there material information requested? Was that substantially complied with? And was there any actual prejudice? And in Staples, the answer was no actual prejudice was proved. That's how the court said, we can't tell. There's a dispute of fact on that. That's not what we have here. Our case is not that there is no proof of actual prejudice. There are ample proofs. But the only prejudice I can see here, and there is prejudice, is the amount of damages. There's no prejudice as to whether there's coverage under this. Sorry, Your Honor. I didn't mean to interrupt you. No, no, no, no. You're fine. There is prejudice. The prejudice is, as the Tran and Pilgrim case identified, which is when the insurer, Ed, the policyholder, refuses to provide the documents that are material needed for evaluation of the claim. Well, and that is refused. And the insurer cannot determine whether there's any liability on the policy. It doesn't differentiate between coverage or dollar amount. If it can't determine its liability under the policy because the insurer, Ed, the policyholder, refuses to provide the information to allow the insurer to make that determination. You're saying the prejudice is simply the inability to adjust the claim and determine what the damages are. Well, it's twofold, and both Tran and Pilgrim identify those factors. One is, can you finish your investigation of the claim? That's one factor. Can you do it? The answer is not here. No, they couldn't because iSchool said, No, we're not giving it to you. We're not going to answer your questions, or at least half of them. The other factor is, could insurers evaluate whether they had any liability under the policy? Was there any ability to say, Yes, there's evidence of lost profits, or, No, they couldn't tell. They didn't know. So when the questions that were raised… …was based on the fact that the vessel had suffered engine damage and, therefore, was unable to process fish. That was their claim. That's correct. So where's the issue of – where's the material fact dispute over whether there was coverage? It's not coverage. It's whether there was any liability under the policy for any actual loss sustained. I think we're saying the same thing. Maybe your nuance is evading me, but you're saying, Look, we are otherwise liable under this policy, but we can't figure out for how much. Or whether. Or whether. It could be zero. Or whether depends on whether there's damages. It's a chicken and egg problem. And that's why insurers had asked for information so they could make that assessment. See, that's where I'm having a hard time because it seems to me that if the – the question in the other cases was, Was something stolen? If it was stolen, it's covered. If it's not stolen, it's not covered. But that's not the question here. The question here is, We all agree that something was stolen in that analogy. Was that worth zero? Was it worth a million dollars or something in between? Or maybe it was worthless and you should be grateful that it was stolen because it was a liability to you. In Tran, the issue was the insurer suspected fraud. And so all the documents – The question was, Was there fraud or was there not fraud? Right. And so all the questions went to, Give us your financial statement, your personal, your business, so we can ascertain, Is there a reason for us to suspect fraud and determine whether that should be put in the policy. But that's not an issue in this case. So it's not a fraud issue in this case, but the issue was having to do with the documents necessary to make that evaluation. So you're saying you can't determine whether there was or there wasn't because they didn't give you the documents? Wouldn't give us the documents. But that seems to be a summary judgment question for the amount of damages. I mean, it may well be that they can't prove up any damages. If Icicle Seafoods had cooperated during that 18-month period, if they hadn't refused repeatedly to provide the documents that insurers needed to be able to make the assessment, we might be in that situation. But why don't you just say, Based on the evidence we have now, we don't see any damages. So therefore, we acknowledge coverage, but the amount that we owe you is zero. I guess because then you're worried about a bad faith claim. Well, it's a commercial relationship. They want to be able to determine, Do we owe you anything? They have the right to determine. The policy says, Look, we pay actual loss sustained. The insurer didn't want to say, Well, we don't want to pay you anything. Based on the evidence right now, what's your assessment on the loss sustained? You're saying it's zero. Well, we had no information that provided that there was a loss. Why don't you just say that it's zero then? See, you keep saying you have no evidence that there's a loss, but you agree that there's coverage under the policy. You just don't know the amount of the loss. Or whether there was one in dollars. Okay. Yeah. I mean, there was no way to tell, unless we had the financial documents. For example, the prior year's financial documents to establish, Did this vessel make money when it processed it? Can you please help me out? I was trying to go back through. I have this million-dollar figure in my head, and now I can't find out where it came from. I thought you'd said you thought that this was a million dollars in loss. I must be misremembering. After the 18 months ran, and there was no documents provided, as requested by the insurer, so there was no substantial compliance. After that period ended, the insurer adjusted the claim as best that could be done. Right. And it was a possible loss only, not probable, because it couldn't determine that there was any liability in the pot. It was a possible loss only. The claim was adjusted for $966,000, very close to a million. That was offered to resolve the claim. Icicle said no way. Yeah. Pay us $4 million, or you've got trouble damages exposure of $12 million. But that's true. I mean, their threats seem to be a little bit. You seem to have a pretty strong case, in my view, that they are going to get a pretty big haircut on the damages because they aren't producing a whole bunch of documents here. Sorry, Ron. I understand your worry about risk, but that's faced by every insurer. I mean, you always face that. But the problem was is that there was this adamant refusal to provide what insurers requested. And it was all very material, and it was all directly relevant to determine. You did come up with an assessment that there was possibly $900,000 in loss here. But possible only. Some of it was for sockeye salmon, and the rest was for expenses. And that was offered. So I don't understand why that doesn't require a reversal of the district court here. Well, the issue is not whether there was a possible loss, Your Honor. The question is was there the substantial requirements that's required by the law. And the Tran and Pilgrim case are very clear. If there's a refusal to provide documents or information that are reasonably requested by the insurer that is relevant and germane to their investigation, and that gets told, no, we're not going to provide you anything. And, by the way, if you don't pay our figure, you have an exposure of $12 million of treble damages. What is the insurer supposed to do? They can't simply roll over. What I would do is tender the $900,000. We did. Well, then go fight the rest. That was rejected. It was sent back. Well, but then it seems to me that you've got a much lower risk. But, again, this is always a risk. I mean, if someone's going to play hardball, they're going to. I mean, I assume these negotiations go on all the time. I mean, that's their card to play is to accuse you of bad faith. If this court reverses the district court, what that will do is it will incentivize every policyholder that has a dollar-mounted issue to refuse to cooperate because now they don't have to. All they can say is, well, we're arguing, and let's go into litigation. That's not the point of investigation. The point of investigation by an insurer is to determine, give us a document so we can say, are we liable? And if that is forwarded by the insurer, the policyholder says, no, we're not going to give you anything because you take our figure or nothing. And if you don't take it, then you have to. Because they produced all these other documents. They could have had the same posture. They could have had the same posture. But what they didn't provide was anything to allow the insurers to assess whether there was lost profits in the dollar amount. And Tran and Pilgrim are very clear as to – if you refuse to cooperate with the policyholder, that causes prejudice, meaning they can't tell, as an insurance company, do they owe any money or not? Can they complete their investigation? That's actual prejudice. And that discharges the obligations as a matter of law. Any further questions? No. Okay, thank you, Counsel. We'll give you one minute for rebuttal. Your Honors, I want to focus very specifically on prejudice, the question of prejudice. Holding aside, again, we say we substantially complied pre-litigation, et cetera. As Mr. Crane said, the insurers said, okay, you're not going to give us any more. We'll adjust this claim with just what you gave us. And their determination was zero. And it's true that there was the mitigation expenses and some small amount of sockeye salmon, but it really was functionally zero on the loss of hire claim. It's undisputed, Your Honors, that all of those documents that were requested and an icicle declined to provide them pre-litigation, all of those documents were produced in discovery in this case. That's acknowledged by the insurers. Those documents have not changed that determination at all. The quantum, I keep saying, sometimes I say coverage, but the amount of coverage positioned by the insurers is still zero. There's no prejudice. They haven't been harmed in any way. Well, except for it seems like if we accept your position, you're creating a system where you're never going to have resolution without litigation. And I don't think that's the point of insurance. Your Honor, I think there's plenty of incentive for the insurer eds to avoid disputes about duty to cooperate, one of which is they're paying lawyers to be here today, if you will. So there's plenty of incentive, and I don't think that there's going to be any notion that we don't no longer need to cooperate. I want to be very clear that the prejudice claim here really is just delay, delay in the investigation because their number was functionally zero, and now it's still zero even though they've received all the disputed information. And I guess I come back to the question that I had for you originally, and I'm not sure I'm buying that, because it seems to me that his argument is, and it has some common sense appeal to it, is it wasn't just delay. It was we take your number and the subset of information that you gave us and live with that or nothing. And so how is an insurance company supposed to actually do its full investigation and come to a good faith decision when it's not being given access to the information, the full amount of information it needs to make the judgment? You want to control this process and then say you weren't prejudiced by the fact that you didn't like what we gave you. Your Honor, the case law in Washington is very committed to the prejudice notion that we don't forfeit our insurance claim unless the insurer was actually prejudiced. The Staples decision really very explicitly and strongly rejects the notion that delay is prejudice. And lastly, on your question about the insurer's dilemma, I would sort of echo what Judge Nelson said, that that is the position that insurers are in all the time. And, indeed, you think about almost any commercial litigant is in. And the idea is that we want there to be an ability for the parties to cooperate with each other, share information, negotiate, discuss, with litigation being a last resort. And I come back to the way that you're presenting this case today. It's not going to be the last resort. It's going to be the only one. Your Honor, respectfully, I think not. Just because, again, Paul, if you look at the correspondence at the time that these requests were being made, we had already produced thousands of pages, forensic accountant report, and, yes, the client icicle pushed back because they felt that things were irrelevant and intrusive in a privately held company. Mr. Court disagreed and thought all that was material. Correct, Your Honor, but we're here on summary judgment, and we think that there's ample factual dispute on substantial compliance, materiality in particular, and prejudice in particular. But is there a factual? So the district court said it was material. I mean, it seems to me if we send this back, if we rule in your favor, we send this back, the insurance company is going to say, well, produce this information now. And you're going to be stuck with a ruling that the district court said it was material. So you're either going to produce it or you're going to take a negative inference by not producing it. Just to be very clear, it's all been produced long since prior to and no remaining discussion. Correct, Your Honor. You've turned over the tax returns. You've turned over all this stuff. The only thing that's left, yes, we're here determining whether our insurance claim is. But they've looked at that information, and they've still said it's zero. And their determination is still zero, which is why we should go to trial, figure out who's right. That's what you're asking. That's what we're asking, Your Honor. Unless there's any other questions, well, thank you. Okay. Thank you. That concludes the argument for today. And we are now in recess for the rest of the day.
judges: TALLMAN, NELSON, FORREST